AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☐ Original  ☐ Duplica...

CLERK'S OFFICE
A TRUE COPY
Dec 27, 2025
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>The person of Jakhuan Tyrell STATEN-GEE<br>(DOB: 09/29/2007) | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.    25-MJ-246 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A3.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before    1/10/2026    *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   William E. Duffin, U.S. Magistrate Judge  .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    12/27/2025   4:00 PM

*Judge's signature*

City and state:    Milwaukee, Wisconsin

William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# <u>ATTACHMENT A3</u>

## Property to Be Searched

The person of Jakhuan Tyrell STATEN-GEE (DOB: 09/29/2007).

3

**ATTACHMENT B**

*Property to be seized*

I.      All records, documents, evidence, objects, and information relating to violations of 18 U.S.C. § 922(q)(2)(A) (Possession of a Firearm in a School Zone); 18 U.S.C. § 922(q)(3)(A) (Discharge of a Firearm in a School Zone); 18 U.S.C. § 922(o) (Possession of a Machinegun); and 18 U.S.C. § 2, involving Jakhuan Tyrell STATEN-GEE (DOB: 09/29/2007), and others unknown, on or about December 22, 2025, including

      a.   Firearms

      b.   Ammunition

      c.   Cellular devices;

      d.   Records and information about possession, custody, and control of firearms and ammunition;

      e.   Records and information about possession of a firearm in a school zone and the discharge of a firearm in a school zone, on or about December 22, 2025 at approximately 1:14 p.m.;

      f.   Records and information relating to a gray 2026 Honda Civic sedan assigned VIN: 2HGFE2F56TH539248 and/or bearing Wisconsin license plate license plate BCF-7292, including but not limited to purchase paperwork, titles, vehicle registration, and insurance documents.

      g.   Records and information relating to the identities of the occupants of a gray Honda Civic on December 22, 2025 at approximately 1:14 p.m.

      h.   Records relating to the path of travel Jakhuan Tyrell STATEN-GEE and/or a gray Honda Civic on December 22, 2025;

      i.   Records and information relating to the identity or location of the suspects; and

      j.   Records and information relating to malicious software.

4

II.     For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

    a.  evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    c.  evidence of the lack of such malicious software;

    d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

    e.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

    f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

    g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

    h.  evidence of the times the COMPUTER was used;

    i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

    j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

    k.  records of or information about Internet Protocol addresses used by the COMPUTER;

    l.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked"

5

or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

m. contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disk drives or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

6



CLERK'S OFFICE
A TRUE COPY
Dec 27, 2025
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

## The person of Jakhuan Tyrell STATEN-GEE (DOB: 09/29/2007)

)
)
)
)
)
)
)

Case No. 25-MJ-246

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A3.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(q)(2)(A), 922(q)(3)(A), and 922(o) | Possession of a Firearm in a School Zone; Discharge of a Firearm in a School Zone; Possession of a Machinegun |

The application is based on these facts:

See the attached affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jacob Dettmering, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

telephone _____ *(specify reliable electronic means)*.

Date: 12/27/2025

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin

William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Jacob Dettmering, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the following premises, vehicle, and person, further described in Attachments A1, A2, and A3 (collectively, "Attachments A"), for the records, information, items, and things described in Attachment B:

> A1.  The premises located at 1239 North 33rd Street, Milwaukee, Wisconsin, more fully described as a two-story single family home with brown-siding and white door and window frames. The numbers "1239" are affixed above the mailbox to the right of the door. The search is to include any garages or storage areas.
>
> A2.    A gray 2026 Honda Civic sedan assigned VIN: 2HGFE2F56TH539248 and/or bearing Wisconsin license plate license plate BCF-7292, registered to Jakhuan Tyrell STATEN-GEE at 1239 North 33rd Street, Milwaukee, Wisconsin
>
> A3.    The person of Jakhuan Tyrell STATEN-GEE (DOB: 09/29/2007).

2.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(q)(2)(A) (Possession of a Firearm in a School Zone); 18 U.S.C. § 922(q)(3)(A) (Discharge of a Firearm in a School Zone); 18 U.S.C. § 922(o) (Possession of a

1

Machinegun); and, 18 U.S.C. § 2, have been committed by Jakhuan Tyrell STATEN-GEE and other(s) unidentified individuals.

4. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since January 7, 2018. I was assigned to the FBI Capital Area Gang Task Force (CAGTF) in Baton Rouge, Louisiana from June 15, 2018, to April 1, 2020. From April 1, 2020, to June 15, 2025, I was assigned to the Milwaukee Area Safe Streets Task Force as the Task Force Coordinator, tasked with investigating violent criminal gangs. From June 15, 2025, to October 1, 2025, I was assigned to the U.S. Marshals Fugitive Task Force, conducting fugitive investigations. Between October 1, 2025 and December 22, 2025, I was assigned as the Acting Supervisory Special Agent and as of December 23, 2025, I have been the assigned Supervisory Special Agent for the Milwaukee Area Violent Crime Task Force (MAVCTF), which is tasked with investigating all violent crimes involving violations of federal law. Since 2018, I have investigated violations of federal law, directed drug and street gang investigations, obtained, and executed search and arrest warrants related to the distribution of illegal narcotics and violent crimes, and debriefed confidential informants and cooperating defendants. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal offenses.

5. I have experience in the investigation, apprehension, and prosecution of individuals involved in criminal offenses, the use of cellular devices to commit those offenses, and information that can be used by law enforcement to assist in identifying the users of cellular devices and their location. I know from training and experience that cell phone users normally have their cell

2

telephones on them or near them as they go about daily activities.[1] This includes persons involved in criminal activities. Further, I know based on training and experience that persons involved in criminal activity may have more than one cell phone and may use cell phones to communicate with associates. Such communications may be before, during, and after criminal activity has been committed in an area. Therefore, in the course of investigating criminal activity occurring at specific location(s), information concerning the identity of cellular devices at or near the location(s) as well as details about the source and nature of communications by those devices during the relevant time frame can provide evidence that assists law enforcement to identify unknown criminal actor(s). In particular, here, I know based on my training and experience that in drive-by shootings, as described below, particularly where one person is a getaway driver and the other is the shooter, that there is a high likelihood that the criminal(s) who committed the criminal activity under investigation carried a cellular device and that the particular crime under investigation frequently involves the use of cellular devices by participants.

**PROBABLE CAUSE**

6.      On or about Monday, December 22, 2025, at approximately 1:14 p.m., multiple gunshots were fired in the vicinity of and at 12XX North 28th Street, Milwaukee, Wisconsin 53208—the residence of an official who works for the United States Department of Justice (OV-1) and his/her family. At the time, these gunshots were heard by multiple family members of OV-1. A family member of OV-1 contacted the Milwaukee Police Department to report the gunshots,

---

[1] I also know that courts have recognized the prevalence of cell phones in daily life. *See Carpenter v. United States*, 585 U.S. 296, 300 (2018) (stating that, as of approximately June 2018, "There are 396 million cell phone service accounts in the United States—for a Nation of 326 million people"); *Riley v. California*, 573 U.S. 373, 395 (2014) (noting that "According to one poll, nearly three-quarters of smart phone users report being within five feet of their phones most of the time").

3

and a ShotSpotter activation occurred. The ShotSpotter system reported five shots fired around

OV-1's residence.[2] A photograph of the Shot Spotter report is shown below.



| SHOT | DATE | TIME | INTERVAL(SEC) | LOCATION |
|------|------|------|---------------|----------|
| #1 | 12/22/2025 | 13:14:51.198 | 0.000 | 43.047043, -87.949227 |
| #2 | 12/22/2025 | 13:14:51.488 | 0.290 | 43.047043, -87.949227 |
| #3 | 12/22/2025 | 13:14:51.761 | 0.273 | 43.047043, -87.949227 |
| #4 | 12/22/2025 | 13:14:52.023 | 0.262 | 43.047043, -87.949227 |
| #5 | 12/22/2025 | 13:14:52.270 | 0.247 | 43.047043, -87.949227 |

---

[2] OV-1 is a prosecutor with the United States Department of Justice, and OV-1 regularly participates in initial appearances, detention hearings, criminal trials, and litigates and prosecutes cases on behalf of the United States. Based on training and experience, I believe that the shooting which occurred at OV-1's residence on December 22, 2025 appears to be targeted, in that the Honda Civic drives slowly past the rear of OV-1's residence, the passenger points the firearm out of the vehicle towards OV-1's residence, and the passenger discharges multiple rounds. I am aware of OV-1's upcoming jury trial against a member of the Sinaloa Cartel and OV-1's role as the lead prosecutor investigating and prosecuting multiple violent individuals. To date, I have not directly linked the suspect vehicle or owner of the suspect vehicle to any of OV-1's ongoing investigations or prosecutions; however, the investigation of this illegal discharge of a firearm/shooting incident continues.

7. Afterwards, case agents obtained video from a nearby surveillance camera, which depicts a matte gray four-door Honda Civic proceeding down the alley behind 12XX North 28th Street, Milwaukee, Wisconsin 53208 and a passenger reaching out of the front passenger side window as the Honda Civic approaches the rear of the garage behind 12XX North 28th Street, Milwaukee, Wisconsin 53208 and discharges multiple gunshots, evidenced by multiple muzzle flashes, with the firearm pointed in the direction of the house, at approximately 1:14 p.m. In the surveillance video, some audio can be heard, which includes two male voices talking excitedly right after the discharge of the firearm. Based upon my review of the audio, your affiant believes that there are two distinct males speaking and one male says "Whoooo, let's go," while what the second male says is unintelligible."

8. After discharging the shots toward the residence and garage located at 12XX North 28th Street, the Honda Civic then turns down another alley and drives away. The Honda Civic has black hub caps/rims, no tint, an air freshener hanging from the rear-view mirror, and small sticker on the driver's door window, and front and back license plates. Photographs depicting the muzzle flash from the passenger side of the Honda Civic, the Honda Civic's black hub caps/rips, an air freshener hanging from the rear-view mirror, and small sticker on the driver's door window, front and back license plates, lack of tint, and exterior are provided below.

5







6





9. On Tuesday, December 23, 2025, case agents recovered five 5.7x28mm casings from the rear of 12XX North 28th Street, Milwaukee, Wisconsin 53208, in or near the alley through which the Honda Civic passed.

10. Case agents obtained surveillance video from the residence located at 28XX West Juneau Avenue, Milwaukee, Wisconsin 53208, which captured the same matte gray Honda Civic on December 22, 2025, shortly before the shooting at approximately 1:15 p.m. travelling eastbound

7

on West Juneau Avenue.[3] The vehicle then turns northbound on North 29th Street and then turns east into the alley which leads behind 12XX North 28th Street, Milwaukee, Wisconsin 53208. Although the footage is dark, the vehicle is clearly a newer model Honda Civic, with black rims, no tint, and a license plate with a license plate frame. A photograph of the vehicle is depicted below.



11.     On Tuesday, December 23, 2025, case agents also obtained surveillance video from James Groppi High School, which sits between North 26th Street and North 27th Street and West Vliet Street and West Juneau Avenue in Milwaukee. The residence at 12XX North 28th Street, Milwaukee, Wisconsin is within a distance of 1,000 feet of the grounds of James Groppi High School, an alternative high school run by the Milwaukee Public Schools.

---

[3] Based on the route of travel, case agents believe this occurred before the shooting, even though the time stamp indicates otherwise.

8

12.     The surveillance video from James Groppi High School shows a matte gray Honda Civic with black hub caps/rims, no tint, and a distinctive license plate holder, drive eastbound on West McKinley Boulevard, and turn north on North 27th Street at approximately 1:15 p.m. on Monday, December 22, 2025. The suspect vehicle can then be seen turning eastbound on Vliet Street. Photographs depicting the vehicle are provided below.



9





13.     On December 26, 2025, case agents were able to contact a homeowner who resides at 25XX West Vliet Street, Milwaukee, Wisconsin. The homeowner has several high-definition cameras affixed to his residence. Case agents reviewed a camera that captured Vliet Street, from

25th Street to mid-block between 26th and 27th Streets. Case agents reviewed the footage from December 22, 2025, and were able to see the suspect vehicle travel eastbound towards the camera. It then turns north on 26th Street to complete a U-turn and turn back west on Vliet Street. The vehicle could then be seen parking right next to a fire hydrant on the north side of the street in front of Children's Advocate Family Foundation, located at 2606 West Vliet Street at 1:16 p.m.

14. The video shows the passenger exiting the vehicle at approximately 1:18:45 p.m.,[4] stand outside the passenger side of the vehicle for approximately 10-seconds and re-enter the vehicle. The passenger was wearing a light-colored top with a black hood up and dark colored pants.

15. At approximately 1:21:02 p.m., the vehicle pulls forward into traffic on Vliet Street but immediately stops after roughly 20-feet. The vehicle then reverses back to its original spot in front of 2606 West Vliet Street. Approximately 20-seconds after parking again, the driver could be seen exiting the vehicle and walking towards the front door of the business. The driver was wearing all black clothing. After being out of the frame for approximately 20-seconds, the driver returns to the vehicle and re-enters the driver's seat.

16. Based upon their observed height and build, case agents believe that both the passenger and driver of the suspect vehicle were both men.

17. At approximately 1:36 p.m., a third person, believed to be a female, walked into the frame from the direction of the business and entered the passenger side rear door of the suspect

---

[4] The surveillance system in the residence was not updated for daylight savings time, so the time shown on the recording was one hour and one minute behind the actual time. For example, the 1:18:45 p.m. time stamp actually showed 2:19:45 p.m. on the surveillance system.

vehicle. Once the third person is in the vehicle, the vehicle departs, travelling westbound toward 27th Street.

18. Case agents were able to obtain video footage from Fine Furniture, located at 1408 North 27th Street, Milwaukee. According to the video surveillance system, the suspect vehicle entered the frame travelling westbound on Vliet Street through 27th Street and continued travelling west at 1:36 p.m. Case agents successfully obtained still images from the video recording and were able to identify a partial license plate, which appeared to be Wisconsin license plate CF-729. The still image is depicted below.



19. Case agents contacted the Milwaukee County Transit System for video footage from a county bus that was seen on surveillance footage, passing the suspect vehicle on Vliet Street while it was parked in front of Children's Advocate Family Foundation, located at 2606 West Vliet

12

Street, at 1:33 p.m.  The video footage obtained depicted the front and the rear of the suspect

vehicle while it was parked.  Still images from that footage are shown below.



13



20.     Case agents conducted check of law enforcement databases based upon the partial plate, and found that Wisconsin license plate BCF-7292, which matches the characters set forth in the license plate recovered from the bus footage, and that plate is registered to a gray 2026 Honda Civic sedan assigned VIN 2HGFE2F56TH539248 and was registered to Jakhuan Tyrell STATEN-GEE (DOB: 09/29/2007) with a home address of 1239 North 33rd Street, Milwaukee, Wisconsin. STATEN-GEE's home address is approximately five blocks away from 12XX North 28th Street, Milwaukee, Wisconsin 53208. According to Wisconsin Department of Transportation records, the gray 2026 Honda Civic sedan assigned VIN 2HGFE2F56TH539248 and bearing Wisconsin license plate BCF-7292 was registered on December 15, 2025 at the home address of 1239 North

14

33rd Street, Milwaukee, Wisconsin, and shows an expiration date of December 31, 2026, and an annual renewal period.

21.     Case agents conducted a search of the FLOCK license plate reader system and found numerous images of the suspect vehicle. Of note, the vehicle was captured on December 22, 2025, travelling northbound on 35th Street through Wisconsin Avenue at 1:11:04 p.m.  It should be noted that the shooting at 12XX North 28th Street, Milwaukee, Wisconsin 53208 was captured on video at 1:14 p.m., and according to Google Maps, it takes approximately 4 minutes to travel from the location the vehicle was captured on FLOCK to the shooting location.  The referenced FLOCK image is shown below.



22.     Case agents researched STATEN-GEE and discovered his Facebook and Instagram accounts. STATEN-GEE's Facebook account had the handle of "Superthrowed Quan," an apparent reference to his first name.  Based upon my training and experience, I am further aware that the "Superthrowed" gang is a street gang operating on the northside of Milwaukee, whose members have been historically linked to crimes including shootings, illegal firearms possession, as well as drug dealing and PPP fraud.  Based upon my training and experience, I am aware that having the social media handle with the gang name "Superthrowed" may indicate membership or

15

affiliation with that gang. STATE-GEE Facebook also had "*ODMB PCT LONGLIVEBEANO HSP X MMF*" in the Intro section of his publicly viewable Facebook page.  His Instagram page had the handle of "*allgrind_nosleeppp*" and listed "*I ain't duckin shii but the (pig emoji)'s LONGLIVEBEANO HSP x MMF*" in the info section of his publicly viewable page.  The photo for STATEN-GEE's Instagram profile depicted STATEN-GEE, standing outside of a vehicle, wearing a purple "Glock" sweatshirt, holding two semi-automatic handguns with extended magazines.



23.     STATEN-GEE had several pictures in his profile which showed him with numerous firearms. The firearms depicted included handguns with extended magazines, a Draco AK-47 Pistol, and an AR style short-barreled rifle or pistol, with the caption: "I got fully ARP (nose wipe emoji).  Case agents know through training and experience that "fully" references a fully automatic firearm, which can discharge multiple rounds with a single trigger pull, and that "ARP" stands for AR Pistol, which is essentially a rifle but classified as a pistol due to the specific stock, and "nose wipe" emoji is used to depict killing someone.  The pictures are depicted below.

16



17



24.     Additionally, one of the photos on STATEN-GEE's page showed, what investigators believed to be STATEN-GEE fanning out money outside of a house.  Case agents were able to identify that the picture was taken at 1239 North 33rd Street, Milwaukee, Wisconsin, due to distinctive spray paint on the ground outside the door of the residence. Shown below is the photo obtained from STATEN-GEE's Instagram profile as well as a Google images photo which shows the distinctive spray paint.  One of the spray-painted quotes is "LL BEANO," which is also referenced in his Instagram and Facebook.

18



19



25.      Case agents conducted an exhaustive review of all the available surveillance footage from the shooting incident as well as the vehicles travel path and identified several unique identifiers of the vehicle.  The vehicle was a newer model Honda Civic, the vehicle was matte gray, the vehicle had dark colored rims, the was no tint on the vehicle, the vehicle had an air freshener hanging from the rear view mirror, front and back license plates with black license plate frames that included bold white writing at the very bottom of the frame, and there was a small white sticker on the lower rear corner of the driver's side window.  Case agents were able to identify all of those identifiers on STATEN-GEE's vehicle. Photographs are depicted below which show the specific characteristics of the vehicle.[5]

---

[5] Case agents originally identified an almost identical vehicle silver Honda Civic displaying Wisconsin license plate AXW-7163 as a suspect vehicle, and obtained a warrant issued by the Honorable William E. Duffin, United States

20



Magistrate Judge of the Eastern District of Wisconsin, for timing advance data under Case No. 25-MJ-243. Through review of additional surveillance footage, which was unavailable until December 26, 2025, case agents were able to determine that vehicle, although almost identical, did not have the white sticker on the driver's side window. Additionally, after obtaining the partial plate for the suspect vehicle case agents determined that the suspect vehicle did not appear in the initial searches through ALPR's. Lastly, until footage was obtained from Fine Furniture, case agents could not make out any characteristics on the license plates.

21



26.     STATEN-GEE's listed residence with the Wisconsin Department of Transportation is 1239 North 33rd Street, Milwaukee, Wisconsin—the same address that the suspect vehicle is registered to. Additionally, case agents checked several other open source and law enforcement databases, which all showed 1239 North 33rd Street, Milwaukee, Wisconsin as STATEN-GEE's current address.  Additionally, a search of Wisconsin Workforce Development records revealed that STATEN-GEE was most recently employed at a Sonic Drive In located in Milwaukee as of the third quarter of 2025 and STATEN-GEE's listed address was 1239 N. 33rd Street, Milwaukee, Wisconsin.

27.     On December 27, 2025, case agents conducted surveillance at 1239 North 33rd Street and identified the suspect vehicle as being parked in front of the residence.  Case agents also observed a male matching the physical description of STATEN-GEE (not a positive identification)

22

leave the residence located at 1239 North 33rd Street and go to the suspect vehicle while a female

spoke to the driver of a black Dodge Charger.  Photographs of this surveillance are set forth below:





28.    Case agents obtained results from testing through the National Integrated Ballistic

Information Network (NIBIN), which determined that the casings recovered from the shooting

24

scene at 12XX North 28th Street, Milwaukee, Wisconsin 53208, were fired from the same gun as another shooting incident that occurred on May 24, 2025, at 1630 North 30th Street, Milwaukee, Wisconsin. During the shooting incident on May 24, 2025, there were 18 casings recovered, of which there were fifteen 5.56 caliber rifle casings and three 5.7x28mm casings. The NIBIN testing revealed that the 5.7x28mm casings recovered from the May 24, 2025, shooting scene and the December 22, 2025 shooting scene were fired from the same firearm. Additionally, based upon training and experience, case agents are aware that the AR pistol displayed in STATEN-GEE's Instagram profile is capable of firing a 5.56 caliber cartridge.

29.     I know through training and experience that firearms, especially handguns and short barreled rifles, can be transported relatively inconspicuously one ones person.  I also know that most people with multiple firearms, store those firearms within their residence as safe keeping in the event someone would break into their vehicle.  There is the possibility of one or more firearms being on his person or in his vehicle if he is driving around.  I also know that law enforcement was unsuccessful in finding all of the casings from the shooting locations, even with utilizing canines. It is very common for shell casings to end up inside the vehicle it is being shot from because they do not eject from the firearm in the same manner every time the firearm is fired.

30.     Case agents believe that a search of STATEN-GEE's residence could reveal firearms, ammunition, electronic devices, and clothing related to the shooting investigation. Additionally, case agents believe that a search of the suspect vehicle could also reveal firearms, ammunition, electronic devices, spent shell casings and clothing related to the shooting investigation.

25

## TECHNICAL TERMS

31. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

    c. Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

32. As described above and in Attachment B, these applications seek permission to search for records that might be found on the premises and vehicles, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

33. Case agents know that electronic devices, particularly cellular telephones, in these locations will contain evidence. In particular, case agents know that the suspect vehicle had both

a driver and passenger at the time of the shooting, that the two individuals appeared to be talking excitedly shortly after the shooting based on surveillance video, and that the two individuals traveled together. I also know that STATEN-GEE has posted multiple photographs and videos, which are often taken by and viewed on cellular phones, of firearms and money, including photographs in and around his residence and of firearms that are consistent with a prior discharge of a firearm incident. I also know that individuals often store information about their custody, control, and ownership of vehicles on cellular phones, including photographs of the vehicles and information about the purchase, titling, and insurance of those vehicles. I also know that cellular phones contain GPS location information and Wi-Fi connection data that may show STATEN-GEE's presence in the suspect vehicle and path of travel around the time of the shooting.

34.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

35.     *Probable cause.* I submit that if a computer or storage medium is found on the premises and vehicles, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

> a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

27

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

36. *Forensic evidence.* As further described in Attachment B, these applications seek permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the premises and vehicles because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

28

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions

29

about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f. I know that when an individual uses a computer the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

37. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage

30

media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

38. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

31

39.     Because several people share the premises as a residence, it is possible that the premises will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime.  If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

## **CONCLUSION**

40.     Based on the foregoing, I believe there is probable cause to search the premises, vehicles, and person described in Attachments A for fruits, evidence, and instrumentalities of these crimes as further described in Attachment B.

# ATTACHMENT A1

## Property to Be Searched

The premises located at 1239 North 33rd Street, Milwaukee, Wisconsin, more fully described as a two-story single family home with brown-siding and white door and window frames. The numbers "1239" are affixed above the mailbox to the right of the door. The search is to include any garages or storage areas on the premises.



1

## ATTACHMENT A2

## Property to Be Searched

A gray 2026 Honda Civic sedan assigned VIN: 2HGFE2F56TH539248 and/or bearing Wisconsin license plate license plate BCF-7292, registered to of Jakhuan Tyrell STATEN-GEE at 1239 North 33rd Street, Milwaukee, Wisconsin.

2

## ATTACHMENT A3

### Property to Be Searched

The person of Jakhuan Tyrell STATEN-GEE (DOB: 09/29/2007).

3

**ATTACHMENT B**

*Property to be seized*

I.  All records, documents, evidence, objects, and information relating to violations of 18 U.S.C. § 922(q)(2)(A) (Possession of a Firearm in a School Zone); 18 U.S.C. § 922(q)(3)(A) (Discharge of a Firearm in a School Zone); 18 U.S.C. § 922(o) (Possession of a Machinegun); and 18 U.S.C. § 2, involving Jakhuan Tyrell STATEN-GEE (DOB: 09/29/2007), and others unknown, on or about December 22, 2025, including

     a.  Firearms

     b.  Ammunition

     c.  Cellular devices;

     d.  Records and information about possession, custody, and control of firearms and ammunition;

     e.  Records and information about possession of a firearm in a school zone and the discharge of a firearm in a school zone, on or about December 22, 2025 at approximately 1:14 p.m.;

     f.  Records and information relating to a gray 2026 Honda Civic sedan assigned VIN: 2HGFE2F56TH539248 and/or bearing Wisconsin license plate license plate BCF-7292, including but not limited to purchase paperwork, titles, vehicle registration, and  insurance documents.

     g.  Records and information relating to the identities of the occupants of a gray Honda Civic on December 22, 2025 at approximately 1:14 p.m.

     h.  Records relating to the path of travel Jakhuan Tyrell STATEN-GEE and/or a gray Honda Civic on December 22, 2025;

     i.  Records and information relating to the identity or location of the suspects; and

     j.  Records and information relating to malicious software.

4

II.     For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c. evidence of the lack of such malicious software;

d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h. evidence of the times the COMPUTER was used;

i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k. records of or information about Internet Protocol addresses used by the COMPUTER;

l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked"

5

or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

m. contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disk drives or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

6